UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| EDWARD RONWIN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:07CV1536 CDP |
| AMEREN CORP., et al., | ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Edward Ronwin owns land at the Lake of the Ozarks. He brings this action pro se. He alleges that he wants to sell the property to a developer, but cannot do so because defendants have told prospective developers that permits for a dock and for dredging would not be issued. He seeks damages for intentional and unlawful interference with business relations under state law, a declaratory judgment that a permit granted in the 1980s is still valid, and damages for interference with an easement he owns (as well as a permanent injunction preventing further interference).

Defendants Ameren Corporation, Union Electric Company, William Green, and Bryan Vance have moved for summary judgment on all claims. Ronwin has also moved for partial summary judgment, arguing that his easement grants him the right to dredge and place docks on the shoreline. I conclude that Ameren

Corporation is entitled to summary judgment on all counts, and that the remaining defendants are entitled to summary judgment as to Ronwin's easement claim. I conclude that genuine disputes of material fact preclude entry of summary judgment on the remaining claims.

**Background**

Plaintiff Edward Ronwin is the sole owner of ARKIANA, a former general partnership, and through ARKIANA, Ronwin owns property on the Lake of the Ozarks. According to Ronwin, sometime in the 1980s or early 1990s the U.S. Army Corps of Engineers granted a permit to ARKIANA to place two boat docks in the lake adjacent to the property. The Corps also permitted ARKIANA to dredge the lake sufficiently to allow the water depth around the docks to be six to six and one-half feet. ARKIANA did not place the two docks, but instead allowed the property to remain in its "natural, virgin state having vegetation only."

The lake is part of a hydro-power project on the Osage River that is owned by defendant Union Electric Company, d/b/a AmerenUE, under a license from the Federal Energy Regulatory Commission (FERC). AmerenUE (UE) is a wholly-owned subsidiary of Ameren Corporation. Ameren Corporation is also the holding company for Ameren Services Corporation. Under the FERC license, UE is to allow certain uses of the lake for the benefit of the public. These uses are

considered "non-project" uses, because they are not related to the power project. UE has established a program requiring owners of docks extending into the lake to obtain permits for the docks and to pay user fees. Before 1981, boat dock and dredging permits were issued by the U.S. Army Corp of Engineers. Now, UE is solely responsible for issuing these permits. UE works in consultation with various agencies, including the Corps of Engineers and FERC, in making permit decisions. Under UE's requirements, any permit for a dock with more than ten slips must be approved by FERC. Approval by UE is the first step in this process. After UE approves an application, UE would then submit the application to FERC, and FERC would decide whether or not to grant approval.

During the last several years, Ronwin has been actively attempting to sell his lake property but has been unable to do so. Sometime in 2006, Ronwin contacted defendant Green, an employee of Ameren Services Corporation, to inquire about dock permits. Green told Ronwin that he could not have a dock permit.[1] Sometime in the past couple years, Ronwin discussed the property with a potential purchaser. Ronwin alleges that this potential purchaser was informed by defendant Vance, another employee of Ameren Services Corporation, that the

---

[1] Ronwin's briefs have made it clear that he has not applied for a dock or dredging permit. Apparently, the only permit application relating to the property was granted in the 1980s or early 1990s.

purchaser could not get a dredging permit for the property. Subsequently, Vance told the potential purchaser that any dredging permit that might issue would only be for 928 square feet, less than Ronwin and the potential purchaser would have liked. The potential purchaser also visited the property with Vance and Gregory Stoner, an employee of the Missouri Department of Conservation. Ronwin alleges that while at the property Stoner told the prospective purchaser that he "was against all excavations of the lake." After the visit to the property, the prospective purchaser told Ronwin that he would not buy the property. According to Ronwin, the prospective purchaser decided not to purchase the property because he did not believe he would be able to get dock or dredging permits.

UE owns fee title to the land adjacent to Ronwin's property, including the shoreline (roughly a few feet above the waterline) and all of the land under the water of the lake. Boat docks attached to the shoreline and any dredging done adjacent to Ronwin's property would be on property owned by UE. However, Ronwin has a reserved easement to use this property owned by UE for certain purposes and subject to certain provisions. This easement was given to Ronwin's predecessor in interest over the property in question.

Ronwin's original complaint had three counts: Count I alleged interference with Ronwin's business expectancy, Count II sought a declaratory judgment in

favor of the validity of a 1980s dock permit, and Count III challenged the constitutionality of the FERC regulations and their manner of enforcement. The original complaint also named Gregory Stoner as a defendant. On April 15, 2008, I dismissed the claims against Stoner for failure to state a claim. I also dismissed Count III of the complaint. Ronwin asked me to reconsider those dismissals, and I declined to do so. Ronwin then asked that he be allowed to file a third amended complaint. By Order on October 10, 2008, I granted Ronwin leave to file his third amended complaint, but instructed him to follow my April 15, 2008 Order and remove defendant Stoner and Count III. Ignoring that order, Ronwin filed a third amended complaint that kept Stoner and Count III. The amended complaint also added a Count IV, alleging trespass against an easement owned by Ronwin. I will not reconsider the claims against Stoner, nor will I reconsider Count III, as those claims were previously dismissed from this action, and will be dismissed again for the reasons stated in my earlier orders.

## Discussion

The standards for summary judgment are well settled. In ruling on summary judgment, the Court views the facts and inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish

both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings but must set forth by affidavit or other evidence specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

## I. Summary Judgment as to Ameren Corporation

Ronwin seeks to hold Ameren Corporation liable for the actions of defendants Green and Vance. Defendants argue that Green and Vance are employees of Ameren Services Company, not Ameren Corporation. Ronwin has not provided any evidence that Vance and Green are employees of Ameren Corporation. However, Ronwin argues that there is no corporate veil between Ameren Corporation and Ameren Services Company, so that the actions by employees of the subsidiary may be attributed to the holding company. I disagree. Ronwin has failed to plead or prove any facts that would pierce the corporate veil under Missouri law.

Ronwin argues that he must only show that Ameren Services is "so extensively controlled by its owner that a relationship of principal and agent is created" in order to pierce the corporate veil. He cites *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) in support of this argument. While Ronwin is correct that decisions of the United States Supreme Court are considered to be the final word on many issues, *First National Bank* is not the controlling law on whether Ronwin has pleaded enough facts to pierce the corporate veil in this case. *First National Bank* is a federal question case: thus the federal law on piercing the corporate veil is applied. *See F.D.I.C. v. Martinez Almodovar*, 671 F. Supp. 851, 876 (D.P.R. 1987) (general rule in federal case is that "a corporate entity may be disregarded in the interests of public convenience, fairness and equity."); *Contractors, Laborers, Teamsters & Engineers Health and Welfare Plan v. Hroch*, 757 F.2d 184, 190 (8th Cir. 1985) (federal substantive law applies to veil piercing under Labor Management Relations Act, although Court may look to state law for guidance.). Where, as in *First National*, there is a question of federal law, a court might properly apply federal common law on the question of piercing the corporate veil.

Where, as here, federal jurisdiction is based on diversity of citizenship, the court must apply Missouri law on piercing the corporate veil. *Stoebner v.*

*Lingenfelter*, 115 F.3d 576, 579 (8th Cir. 1997). Under Missouri law, the general rule is that two separate corporations are regarded as distinct legal entities, even if the stock of one is wholly owned by the other. *Mitchell v. Home Improvement Ins. Co. of Ill.*, 865 S.W.2d 779, 784 (Mo. Ct. App. 1993). The exception to this rule occurs when a party "pierces the corporate veil." *Id.*

Courts in Missouri use two interchangeable tests to decide whether to pierce the corporate veil: an instrumentality test or an alter ego test. *In re President Casinos, Inc.,* No. 02-53005-659, 2007 WL 2908193, at *5 (Bankr. E.D. Mo. Sept 14, 2007). Under the instrumentality test, Ronwin must show: 1) that Ameren Corporation controls, in the form of complete domination, not only the finances, but the policy and business practice of Ameren Services Corporation; 2) that such control was used by Ameren Corporation to "commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act" in contravention of Ronwin's legal rights; and 3) that the control and breach of duty proximately caused injury to Ronwin. *Id.* Ronwin has not shown anything that could even arguably satisfy the second or third prong of this test.

Under the alter-ego test, Ronwin must show 1) that Ameren Services Corporation was controlled and influenced by Ameren Corporation; and 2) that the "corporate cloak was used as a subterfuge to defeat public convenience, to justify

a wrong, or to perpetrate a fraud." *Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp.*, 885 S.W.2d 771, 773-74 (Mo. Ct. App. 1994). Again, Ronwin has failed to present any allegation or evidence that would satisfy the second part of this test.

Because Ronwin has failed to establish that, under the applicable Missouri law, he is entitled to pierce the corporate veil and hold Ameren Corporation liable for the actions of employees of Ameren Services Corporation, Ameren Corporation is entitled to summary judgment on all claims. There is no evidence creating a genuine factual dispute, and summary judgment is appropriate.

**II. Summary Judgment as to Count IV: Ronwin's Easement**

Ronwin argues that a reserved easement in his deed gives him, and any future owner of the property, the absolute right to build docks and dredge in the lake. Defendants disagree, arguing that the plain language of the easement makes Ronwin's rights to build docks and dredge subject to federal and state regulations, such as those UE is authorized to enforce. I agree with defendants that Ronwin's interpretation of the easement goes against the plain language of the document, and defendants are entitled to summary judgment on this claim.

The easement provides, in relevant part:

> This deed is made, however, subject to the following easement

reserved to and retained by Union Electric Land and Development Company in and to all lands herein conveyed to Union Electric Light and Power Company, viz; Union Electric Land and Development Company for itself, its successors and assigns, hereby reserves an easement in the lands hereinbefore described and hereby conveyed, to use the surface of said lands, whether submerged or not, for any and all purposes whatsoever, including the erection and maintenance of improvements thereon, **provided such use will in no way interfere with the construction, operation and maintenance by Union Electric Light and Power Company, its successors or assigns, of the said dam** . . . under the license issued to Union Electric Light and Power Company, by the Federal Power Commission for said Project No. 459 Mo., or under any renewal thereof, or under any license which may hereafter be issued to Union Electric Light and Power Company, its successors or assigns, and **provided such use will in no way interfere with the maintenance and operation of such dam** or reconstructed dam by the United States Government or its licensees, **and provided further that such uses do not violate any regulation of public authorities, either Federal or State, having jurisdiction over the Lake Reservoir and its shores**.

(emphasis added). In interpreting the meaning of an easement, I must attempt to ascertain the intent of the grantor from the whole of the instrument, in line with the facial intent of the document "gathered from the everyday, good sense of their language." *Knox College v. Jones Store Co.*, 406 S.W.2d 675, 679-80 (Mo. 1966). An interpretation that is unreasonable should be avoided when a reasonable construction of the document can be adopted. *See Blackburn v. Habitat Dev. Co.*, 57 S.W.3d 378, 386 (Mo. App. S.D. 2001). It is clear from the plain language of the easement that the parties intended that the owner of the land be given the right

to construct improvements, such as docks, but that such right was subordinate to any limitations imposed by federal and state authorities.

In a recent Western District of Missouri case, an easement with the exact same language as Ronwin's was interpreted by the court. *Union Electric Co. v. Prewitt*, No. 2:08CV4113 NKL (W.D. Mo. Dec. 18, 2008) (order granting summary judgment). In *Prewitt*, the court agreed with UE that the landowner's reserved easement was subject to UE's duty to delegate non-project use of project property at the Lake of the Ozarks. *Id*. Ronwin's easement is expressly subject to UE's rights and duties under its license. Ronwin may only make "such uses that do not violate any regulation of public authorities, either Federal or State, having jurisdiction over the Lake Reservoir and its shores." UE, under license from FERC, has the authority to require third parties to submit permit applications for commercial docks. Ronwin's easement rights – which are limited to "uses that do not violate any regulation" of federal agencies having jurisdiction over the lake, including FERC – do not trump UE's permitting program. Ronwin's easement rights do not restrict UE's authority to require Ronwin to obtain a permit before constructing docks.

Because the plain language of the easement makes Ronwin's right to build docks or dredge in the lake subject to UE's permit program, defendants are

entitled to summary judgment on this claim.

## III.  Remaining Issues of Material Fact

I conclude that genuine issues of material fact preclude summary judgment on Counts I and II.

### A.  Count I: Intentional Interference With Business Expectancy

Ronwin argues that representations made to him and to his prospective purchaser by defendants were "deliberately [misleading] . . . and violative of FERC regulations dealing with dock and dredging permits." These misrepresentations, according to Ronwin, caused the prospective purchasers to decide not to purchase the land.  Defendants argue that UE has the authority and responsibility to ensure that shoreline development activities at the Lake of the Ozarks are consistent with the requirements, purposes, and operations of their FERC license.  This authority, according to defendants, gives them an unqualified legal right to state an opinion about the probability that boat dock and dredging permits would be granted by UE.

Under Missouri law, a claim of tortious interference with a contract or business expectancy requires proof of: "(1) a contract or business expectancy; (2) defendant's knowledge of the contract or relationship, (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5)

damages." *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 316 (Mo. 1993). Defendants argue that Ronwin has failed to show an absence of justification.

"Absence of justification is the absence of any legal right on the part of the defendant to take the actions about which a plaintiff complains." *Baldwin Props., Inc. v. Sharp*, 949 S.W.2d 952, 956 (Mo. Ct. App. 1997) (quoting *SSM Health Care, Inc. v. Deen*, 890 S.W.2d 343, 346 (Mo. Ct. App. 1994)). Under Missouri law, unless improper means are used, defendants are justified in interfering with a contract or business expectancy if they have "an unqualified legal right to do the action of which the petition complains." *Sharp*, 949 S.W.2d at 957 (quoting *Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co., Inc.*, 931 S.W.2d 166, 181 (Mo. Ct. App. 1996)). Means are improper if they are independently wrongful. *Id*. at 957. Improper means include "threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." *Id.*

Ronwin is required to plead facts tending to show that defendants committed some independently wrongful act in the process of exercising their constitutionally protected right to free speech. *See Nazeri*, 860 S.W.2d at 317. He has done so. Ronwin argues that the statements by defendants to prospective purchasers were false and misleading. Defendants disagree. This factual dispute

must be resolved by a jury.

### B. Count II: Permit Grandfathered.

Ronwin alleges that a February 26, 1990 permit issued by UE grants him authority to construct boat docks at any time in the future. Defendants argue that this document merely modifies an existing Corps of Engineers permit, and not the expiration date, and that the permit remained set to expire March 29, 1992. There are disputes of fact and law regarding whether Ronwin's original permit expired. Count II seeks a declaratory judgment, which is an issue for the court, not a jury. Although Ronwin has asked for damages under this count, he has not made any argument that could reasonably support a claim for damages. I will deny the motion for summary judgment on Count II, but it will not be decided by a jury. Instead, I will decide all issues of Count II, whether factual or legal, at the same time the jury considers Count I.

## Conclusion

The undisputed facts of this case show that defendants Green and Vance are employees of Ameren Services Corporation. Because Ronwin has not pleaded facts that would pierce the corporate veil between Ameren Corporation and Ameren Services Corporation under the applicable Missouri law, Ameren Corporation is entitled to summary judgment on all claims. Additionally,

defendants are entitled to summary judgment on Count IV, because the plain language of the easement subjects Ronwin's rights to build improvements and to dredge to UE's authority under the license from FERC. The parties' remaining arguments raise disputes of material fact, and summary judgment is inappropriate on those claims.

As previously ordered, the jury trial of this case will begin on **April 27, 2009 at 9:00 a.m.** Ronwin's claims against defendants Union Electric, Green, and Vance under Count I for intentional interference with business expectancy will be tried to the jury. At the same trial, I will hear Ronwin's claims under Count II for declaratory relief regarding his permit. The parties have already filed the first part of their pretrial submissions, and the second part (objections to deposition testimony, interrogatory answers and admissions proposed to be offered in evidence; requests for additional or modified instructions and forms of verdicts; motions in limine) are due on **April 17, 2009**, as specified in my March 17, 2009 Memorandum and Order. The parties are reminded that there is a telephone pretrial conference on **Thursday, April 16, 2009 at 2:00 p.m.** Defendants' counsel will be responsible for placing the call and having all parties on the line before contacting the Court.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#92] is GRANTED in part and DENIED in part. Defendant Ameren Corporation shall have summary judgment on all claims, and the remaining defendants shall have summary judgment on Claim IV. Defendants' motion is denied in all other respects.

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment [#90] is DENIED. Plaintiff's motion to file a sur-reply [#98] is GRANTED.

**IT IS FURTHER ORDERED** that Count III and all claims against defendant Stoner are again dismissed with prejudice.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 25th day of March, 2009.